UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| MARIE THERESE GLADUE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 1:13-CV-186-CEJ |
| | ) |
| SAINT FRANCIS MEDICAL CENTER, | ) |
| | ) |
| Defendant. | ) |

### **MEMORANDUM AND ORDER**

The plaintiff brings this action asserting claims of employment discrimination and unlawful retaliation, in violation of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e, *et seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623, *et seq.* Presently before the Court are the parties' cross-motions for summary judgment, pursuant to Fed. R. Civ. P. 56(a). The issues are fully briefed.[1]

**I. Background**

Defendant Saint Francis Medical Center is a private, Catholic hospital in Cape Girardeau, Missouri. After hiring a consulting firm to perform an external review of its Education Department in 2010, Saint Francis decided to create a new position titled Director of Training and Development. The Director would, among other things, spearhead the department's efforts to revise and enhance the hospital's medical education protocols and adopt best practices.

---

[1]Plaintiff responded to defendant's original motion for summary judgment, but not to the defendant's amended motion. Nevertheless, because plaintiff's response addresses the substance of the arguments in the amended motion, the Court will consider the response as if directed to the amended motion.

Plaintiff Marie Therese Gladue was fifty-two years old during the relevant time period. She holds a Bachelor of Arts degree in International Studies, a Master of Science degree in Training and Organizational Development, and a Master of Business Administration. Plaintiff has worked in the field of training and development since at least 1992, but she had no experience working for a hospital before she began working for Saint Francis.

Plaintiff was contacted by a recruiter on behalf of Saint Francis and was invited to interview for the position. She was interviewed by Wayne Smith, Steven Bjelich, Jeanette Fadler, Marilyn Curtis, Teri Kreitzer, and other staff. At Fadler's recommendation, Smith offered the job to plaintiff. Plaintiff was offered a starting of $96,213.00, which she accepted without negotiation.

Plaintiff began her employment at Saint Francis on June 28, 2010. Initially plaintiff reported to Smith and continued to do so until he resigned in September 2010. Thereafter plaintiff reported to Fadler, the Vice President of Patient Care Services, who is female and several years older than plaintiff.

In the first months after she was hired, plaintiff performed an assessment of the Education Department and its staff, she created a business plan for the department, and she began reorganizing the department to address the deficiencies noted in the consultants' report. During the reorganization, two employees complained to Fadler about plaintiff, but Fadler did not take any disciplinary action against plaintiff based on those complaints. In August 2011, plaintiff received a positive performance evaluation from Fadler; her salary was then increased to $100,131.00. Plaintiff was satisfied with her performance evaluation.

At some point, plaintiff reported to Fadler that she had heard a rumor that some employees had referred to plaintiff as "a bitch" and "the devil." Fadler told plaintiff that such comments would not be tolerated, though no disciplinary action was taken because the rumored employees were not identified. It is undisputed that Fadler never made any offensive or discriminatory comments about plaintiff or other individuals.

Saint Francis has a policy prohibiting sexual harassment. The policy states that complaints of sexual harassment are to be brought to the attention of the Human Resources Manager, Nicole Chance, for investigation. It is undisputed that plaintiff never filed a formal complaint of harassment, and she never lodged an informal complaint of harassment or a complaint of discrimination before she was terminated. Other than reporting rumors of the derogatory remarks made about her by unknown employees, plaintiff never complained of mistreatment by other employees.

On November 1, 2011, plaintiff met with Chance. They discussed rumors that employees outside the Education Department were concerned that plaintiff would attempt to have them fired. Chance never made any offensive or discriminatory comments about plaintiff's age or religion. Plaintiff also admits that, other than with regard to the investigation that ensued, plaintiff did not consider any of Chance's remarks to be offensive or discriminatory with regard to plaintiff's sex.

On November 23, 2011, Jessica Riley, who was one of plaintiff's subordinates, approached Chance to voice concerns about plaintiff. Though Riley asked Chance not to act on her complaints, Chance prepared notes of their

meeting. Chance's summary of the meeting with Riley is as follows: Riley "stated that she was fearful of retaliation from Marie." [Doc. #115-3 at 74–75] Riley felt that "if her name is attached [to the investigation], her job would be [in] danger." *Id.* Riley reported that plaintiff had insisted on being allowed to attend a private baby shower that Riley had planned even though she was not invited. When Riley refused to permit plaintiff to attend, plaintiff continued to argue with her for an hour and a half. According to Riley, plaintiff's "tone and body language became aggressive several times," and she said that she would attend the shower. *Id.* Plaintiff also said that former members of the department "had better not make the situation tense, . . . or their jobs would be affected." *Id.*

Chance brought Riley's complaint to Fadler's attention. Chance then investigated the complaint. She met with Ashley Seabaugh and Elizabeth Stone, two of plaintiff's other subordinates, to discuss the matter, and she prepared notes of the meetings. Seabaugh told Chance that she was "very nervous talking to [Chance] about [plaintiff], that she didn't want to be 'targeted' for talking to [Chance]." [Doc. #115-3 at 77] She recalled seeing plaintiff "turn on others if they question a decision or do anything that [plaintiff] doesn't approve." *Id.* Seabaugh was "extremely nervous in th[e] meeting. . . . [H]er voice was very shaky. When she talked about her concern of [plaintiff] finding out she provided the information, tears were rolling down her face." *Id.* Stone similarly reported to Chance that she feared plaintiff and that it was a "very uncomfortable work environment." [Doc. #115-3 at 76]

4

Chance next prepared a memorandum to Fadler in which she summarized her investigation and recommended that Saint Francis terminate plaintiff's employment. In pertinent part, the memorandum reads:

> I feel strongly that Marie Gladue should not be allowed to remain in a position of authority at Saint Francis Medical Center. . . . Employees are clearly in fear of losing their jobs if they, in any way, displease Marie and the evidence indicates that such fear may be justified. . . . [T]his case is not an isolated one and there has been a trend of Marie taking retaliatory actions against those individuals whom she felt had slighted her. . . . Placing Marie back into the Director position . . . is tantamount to telling employees that Saint Francis condones this behavior and employees have no recourse when treated unfairly. I don't believe that is the message we want to send to our employees, nor do these behaviors comply with the values of Saint Francis Medical Center.

[Doc. #115-3 at 73]

Fadler reviewed Chance's memorandum and her notes from the investigation. Fadler then decided to terminate plaintiff's employment. The notice of termination, which Fadler prepared and Chance reviewed and signed, explained that plaintiff was being terminated for: "Verbally intimidating, coercing or interfering with employees by engaging in behavior that has the effect of creating an uncomfortable environment for others; meddling in the affairs of others. This behavior cannot be tolerated by a leader of Saint Francis Medical Center." [Doc. #115-2 at 86] Plaintiff was issued the termination notice during a meeting with Chance and Fadler on December 27, 2011. She signed the notice, and was terminated immediately.

After plaintiff was terminated, Saint Francis again began a search to fill the Director position. The hospital hired Steven Firmland, a 51-year-old man, to replace plaintiff. He began working in the training and development field in 1989. He holds a Bachelor of Science in Political Science, a Master of Science in Political

5

Science, and a Doctorate of Management in Organizational Leadership. Firmland had previously earned a salary of $150,000.00 as a consultant. Saint Francis offered Firmland a starting salary of $100,000.00, but he negotiated his starting salary to $109,000.00. Firmland remains Director of the Education Department. Because the department completed its adjustments following the consultants' report, Firmland's responsibilities as Director are not precisely the same as plaintiff's had been.

II. **Legal Standard**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underlying facts. *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a

party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986).

### III. Discussion

#### a. Disputed Material Facts

Though plaintiff disputes the majority of the facts asserted in Saint Francis's motion for summary judgment, the Court's analysis is confined to those facts that are material to the issue of whether the defendant is entitled to judgment as a matter of law. *See Dotson v. Delta Consol. Indus., Inc.*, 251 F.3d 780, 781 (8th Cir. 2001); *Bissonette v. Luskey*, No. CIV. 02-335 ADM/AJB, 2003 WL 1700466, at *2 (D. Minn. Mar. 27, 2003). Moreover, the Court gives no weight to assertions that are not supported by the evidence, that represent a misstatement of the evidence, or that are based on speculation, because they do not create a genuine fact dispute. *See* Fed. R. Civ. P. 56(c)(1), (3); *White v. McDonnell Douglas Corp.*, 904 F.2d 456, 458 (8th Cir. 1990) (per curiam); *Brunskill v. Kan. City S. Ry. Co.*, No. 06-00205-CV-W-REL, 2008 WL 413281, at *1 (W.D. Mo. Feb. 12, 2008) *aff'd*, 331 F. App'x 426 (8th Cir. 2009); *see also* E.D. Mo. L.R. 4.01(E).

#### b. Plaintiff's Claims

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Title VII also makes it "an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed

7

any practice made an unlawful employment practice by [Title VII] . . . ." *Id.* § 2000e-3(a). The ADEA similarly makes it "unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a).

Plaintiff claims that Saint Francis terminated her employment because of her religion, sex, and age. She also claims that the defendant retaliated against her for opposing age discrimination and that she was subjected to unwelcome gender-based harassment.

### i. The Decisionmaker

As a threshold matter the Court must address who decided to terminate plaintiff. It is undisputed that Fadler's decision to terminate plaintiff was based entirely on Chance's investigation, a decision that Chance was then called upon to ratify in her role as Human Resources Manager. The legal term for plaintiff's proffered theory of imputed liability and proximate causation in the employment discrimination context is "cat's paw liability." *Marez v. Saint-Gobain Containers, Inc.*, 688 F.3d 958, 964–65 (8th Cir. 2012). Under that theory, "if a non-decisionmaker performs an act motivated by a discriminatory bias that is intended to cause, and that does proximately cause, an adverse employment action, then the employer has cat's-paw liability." *Id.* (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1045 (8th Cir. 2011)). Furthermore, when the allegedly discriminating individual is the person who conducted the investigation upon which the decisionmaker relied, then the requisite proximate causation may be established: "[I]f the independent investigation relies on facts provided by the biased supervisor . . . then the employer (either directly or through the ultimate decisionmaker) will have effectively delegated the factfinding portion of the

investigation to the biased supervisor." *Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1193 (2011). Because Fadler relied entirely on Chance's investigation to make her decision to terminate plaintiff, the Court draws the inference in plaintiff's favor that cat's paw liability applies. Plaintiff can avoid summary judgment if there is evidence that either Fadler or Chance discriminated against her.

### ii. Religion

Plaintiff alleges that Saint Francis discriminated against her when it terminated her employment because of her religion, Catholicism. "[A]n employee cannot bring a discrimination claim without first exhausting his or her administrative remedies," which requires raising that claim in a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). *Briley v. Carlin*, 172 F.3d 567, 571 (8th Cir. 1999); *see Shelton v. Boeing Co.*, 399 F.3d 909, 912 (8th Cir. 2005) (recognizing that exhaustion is required for both ADEA and Title VII claims). Though plaintiff filed a charge of discrimination and an amended charge of discrimination with the EEOC, it is undisputed that she did not allege that her religion was a basis for her termination in either of those charging documents. Nor is plaintiff's theory of religious discrimination "like or reasonably related to" the claims of sex, age, disability, national origin, and genetic discrimination, or retaliation and harassment, that she asserted in her charge and amended charge. *See Richter v. Advance Auto Parts, Inc.*, 686 F.3d 847, 852 (8th Cir. 2012) (citing *Wedow v. City of Kansas* City, 442 F.3d 661 (8th Cir. 2006)). Therefore, plaintiff's Title VII religious discrimination claim fails as a matter of law, and the Court will grant summary judgment to Saint Francis on that claim.

### iii. Age discrimination

There is no direct evidence of age or sex discrimination in this case, nor is there direct evidence of retaliation or harassment. *See Torgerson*, 643 F.3d at 1045–46 (collecting cases and describing what constitutes direct evidence). Absent direct evidence of discrimination, a plaintiff's ADEA claim is analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). *See Tramp v. Associated Underwriters, Inc.*, 768 F.3d 793, 800 (8th Cir. 2014).

Under this framework, the plaintiff initially has the burden to establish a prima facie case of discrimination. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011). A prima facie case creates a rebuttable presumption of discrimination. The burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for its decision. If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination. *Id.* (citing *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873–74 (8th Cir. 2010)). "A plaintiff provides sufficient evidence of pretext by showing that the employer's explanation is unworthy of credence . . . because it has no basis in fact . . . or by persuading the court that a prohibited reason more likely motivated the employer." *Hilde v. City of Eveleth*, 777 F.3d 998, 1004 (8th Cir. 2015) (quotation marks and citation omitted). The ultimate burden of proving discrimination rests with the plaintiff. *Id.* In ADEA cases, that burden requires a plaintiff to establish that age was the but-for cause of the adverse action. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177–78 (2009).

To establish a prima facie case of age discrimination, a plaintiff must show that: "(1) [s]he was at least 40 years old; (2) [s]he was terminated; [and] (3) [s]he was meeting [her] employer's reasonable expectations at the time [s]he was terminated . . . ." *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011). She must also put forth (4) "some additional evidence that age was a factor in the employer's termination decision." *Tramp*, 768 F.3d at 800. Such additional evidence is present when a plaintiff "was replaced by an individual who was substantially younger." *Haigh*, 632 F.3d at 468. It is undisputed that plaintiff was within the protected age group during her employment and that she was terminated from her position. There is disagreement about whether plaintiff was meeting her employer's reasonable expectations at the time of the termination. But even if this factor were not in dispute, plaintiff has not established a prima facie case of age discrimination, as she has not presented "some additional evidence" that her age was a factor in Saint Francis's decision.

Plaintiff concedes that she never heard anyone make a derogatory remark about her age. She offers instead only speculation that Chance, Riley, Seabaugh, and Stone must have been influenced by plaintiff's age because they "*might* have recognized that the plaintiff was leading in an appropriate manner" if they had had "more life experience." [Doc. #102 at 5] (emphasis added). But speculation is not evidence. Moreover, Fadler, the decisionmaker, is several years older than plaintiff, which belies any suggestion that plaintiff's age played a role in Fadler's decision. Though Chance was only 33 years old, there is no evidence that she considered plaintiff's age when she conducted the investigation, recommended termination, or ratified Fadler's decision. Furthermore, Firmland was 51 years old at the time he

11

was hired as plaintiff's replacement, just one year younger than plaintiff. Thus, plaintiff has not put forth evidence that "[s]he was replaced by an individual who was substantially younger." *Haigh*, 632 F.3d at 468.

Because plaintiff has failed to establish a prima facie case of age discrimination, Saint Francis is entitled to judgment on plaintiff's ADEA claim.

### iv. Sex discrimination

Absent direct evidence of discrimination, a plaintiff's Title VII sex discrimination claim is analyzed under the *McDonnell Douglas* framework. *Pye*, 641 F.3d at 1019. To establish a prima facie case of sex discrimination, a plaintiff must show (1) she is a member of a protected class, (2) she met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Id.* (citing *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011)). "The required *prima facie* showing is a flexible evidentiary standard, and a plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Id.* (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039–40 (8th Cir. 2010) (internal quotation and citation omitted). The burden then shifts to the defendant to assert a legitimate, nondiscriminatory reason for the adverse action, and then back to the plaintiff to show pretext. *Id.* However, for sex discrimination claims under Title VII, a plaintiff need not prove but-for causation, merely that her sex was a motivating factor in the employer's decision to terminate her. *See* 42 U.S.C. § 2000e–2(m); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526 (2013).

The Court will assume without deciding that plaintiff has established a prima facie case of sex discrimination. The undisputed evidence is that several employees voiced complaints about plaintiff, and Saint Francis has proffered plaintiff's unacceptable behavior as a legitimate, non-discriminatory reason for terminating her employment. The burden shifts to plaintiff to show that this proffered reason was a pretext for sex discrimination. No such showing is made here.

Plaintiff has not put forth any evidence showing that any similarly situated male employee was treated more favorably than she for similar conduct. A plaintiff "has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to her by a preponderance of the evidence." *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000) (quotation marks and citation omitted). "Individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 613 (8th Cir. 2014) (quoting *Clark*, 218 F.3d at 918). Plaintiff offers no evidence of male employees who were supervised by Fadler or who were supervised or investigated by Chance and were not terminated for similar behavior.

The fact that some of the plaintiff's job duties differed from those of Firmland, her male successor, does not establish that the two were similarly situated in all relevant respects and that he received better treatment. *Id.* It is undisputed the differences in job duties resulted from the fact that plaintiff had to implement the consultants' report while that process was complete by the time Firmland took his position. Nor is the difference in the starting salaries sufficient to establish discrimination. Plaintiff did not attempt to negotiate the salary that was

13

offered to her.  In contrast, Firmland's starting salary resulted from his rejecting the initial offer and negotiating a higher amount.  Plaintiff also fails to account for the fact that Firmland has a doctoral degree, while her highest degree is at the masters' level, which could have easily justified the difference in compensation.  No reasonable juror could conclude based on those differences in job responsibilities and salary that Chance or Fadler engaged in insidious sex discrimination by replacing plaintiff with a man.

Plaintiff concedes that neither Chance nor Fadler ever made any derogatory comments about her sex.  Also, Chance, Fadler, Riley, Seabaugh, and Stone are all women.  Absent evidence to the contrary, no reasonable juror could draw the conclusion that, in a situation where all the key players to the termination are in the same protected group, the protected characteristic was a motivating factor in the termination decision.

Plaintiff admits that the investigation notes and Chance's recommendation were the "sole basis" for her termination.  [Doc. #102 at 3]  She then goes on to say that the "investigation notes and recommendation for termination were laced with language reflecting gender bias."  *Id.*  But plaintiff does not identify the language in the notes or the recommendation that evidences gender bias, and none is apparent.

For all of those reasons, plaintiff has failed to establish that her performance-based termination was pretext for sex discrimination.  Therefore, Saint Francis is entitled to summary judgment on plaintiff's Title VII sex discrimination claim.

### v. Retaliation

Retaliation claims are also subject to the *McDonnell Douglas* framework. *Clegg v. Ark. Dep't of Corr.*, 496 F.3d 922, 928 (8th Cir. 2007). "To establish a prima facie case of retaliation, [a plaintiff] must show (1) she engaged in protected conduct, (2) she suffered a materially adverse employment act, and (3) the adverse act was causally linked to the protected conduct." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 978 (8th Cir. 2012). The defendant then has the opportunity to put forth a legitimate, nondiscriminatory reason for the action, and the plaintiff can rebut that reason with evidence of pretext. *Id.* "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action." *Nassar*, 133 S. Ct. at 2528.

Plaintiff claims that she was retaliated against for opposing discriminatory conduct by some of Saint Francis's employees. *See Brannum v. Mo. Dep't of Corr.*, 518 F.3d 542, 547 (8th Cir. 2008). The only specific allegation she raises is that Saint Francis had a policy of requesting, but not requiring, applicants to submit their birthdates on electronic job applications, which plaintiff believed violated the ADEA. *See Guimaraes*, 674 F.3d at 977–78 (holding that Title VII applies to retaliation claims "broadly to cover opposition to employment actions that are not unlawful, as long as the employee acted in a good faith, objectively reasonable belief that the practices were unlawful."). Plaintiff claims that she was terminated because she reported her concerns to Chance. Assuming *arguendo* that plaintiff has established a prima facie case, she has not shown that the defendant's proffered reason for terminating her was a pretext for unlawful retaliation.

"Proof of pretext requires more substantial evidence than a *prima facie* case because unlike evidence establishing a *prima facie* case, evidence of pretext . . . [and retaliation] is viewed in light of the employer's justification." *Gibson v. Geithner*, 776 F.3d 536, 540 (8th Cir. 2015) (internal quotation marks and citation omitted). "There are at least two routes for demonstrating a material question of fact as to pretext: first, a plaintiff may succeed indirectly by showing the proffered explanation has no basis in fact; or, second, a plaintiff can directly persuade the court that a prohibited reason more likely motivated the employer." *Id.* There is no genuine dispute that Riley, Seabaugh, and Stone were afraid of retaliation by plaintiff, so much so that Seabaugh began crying while explaining her fear that plaintiff would find out she had spoken to Chance. Thus, Saint Francis's proffered explanation for the termination has a basis in fact.

Plaintiff has also not produced sufficient evidence that a reasonable jury could conclude that Saint Francis was more likely than not (*i.e.*, by a preponderance of the evidence) driven to terminate her because of her protected conduct. *See Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 857 (8th Cir. 2012). For example, plaintiff does not produce any actual evidence (as opposed to mere conjecture) that other leaders of the hospital engaged in similar behavior but were permitted to keep their jobs because they had not reported violations of the law.

Plaintiff attempts to show pretext by suggesting that Saint Francis violated its internal policy manuals when it investigated and terminated her rather than suspending her. But the hospital uses the policies as guidelines for the mine-run of situations, and Saint Francis reserves the right to deviate from the policies, as it did here. Moreover, an employer can "choose how to run its business, including not to

follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *Guimaraes*, 674 F.3d at 979 (citation omitted). "The appropriate scope of investigation is a business judgment, and shortcomings in an investigation do not by themselves support an inference of discrimination." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 863 (8th Cir. 2009). Plaintiff does not provide any evidence of other instances in which a similarly situated employee-leader who had not engaged in protected activity was investigated for the same or similar conduct and was suspended rather than immediately discharged. Even if the hospital deviated from its personnel policies, such would not establish pretext.

For these reasons, the Court concludes that Saint Francis is entitled to summary judgment on plaintiff's Title VII retaliation claim.

### vi. Harassment

Finally, plaintiff claims that she was subject to discriminatory harassment by her subordinates and other non-supervisory coworkers.

> To establish a *prima facie* claim of hostile work environment by non-supervisory co-workers, a plaintiff must show (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based on her membership in a protected group; (4) that the harassment affected a term, condition, or privilege of her employment by creating a hostile work environment; and (5) that the employer knew or should have known about the harassment and failed to take proper remedial action.

*Cross v. Prairie Meadows Racetrack & Casino, Inc.*, 615 F.3d 977, 981 (8th Cir. 2010). "The standard for demonstrating a hostile work environment on the basis of sexual harassment is a demanding one." *Id.* "Title VII does not prohibit all verbal or physical harassment and [it] is not a general civility code for the American workplace." *Nitsche v. CEO of Osage Valley Elec. Coop.*, 446 F.3d 841, 846 (8th

17

Cir. 2006) (internal quotations omitted). "Actionable conduct must therefore be extreme rather than merely rude or unpleasant." *Cross*, 615 F.3d at 981.

"A plaintiff must establish that discriminatory intimidation, ridicule, and insult permeated the workplace." *Id.* "'[C]omplaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." *Nitsche*, 446 F.3d at 845–46 (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). A court is to consider the "totality of the circumstances, including the frequency and severity of the conduct, whether it is physically threatening or humiliating, and whether it unreasonably interferes with the plaintiff's job performance" to "determine whether a plaintiff has demonstrated a hostile work environment." *Cross*, 615 F.3d at 981. Moreover, "if the victim does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).

Plaintiff points to two derogatory statements attributed to unidentified employees in which she was referred to as "a bitch" and "the devil." She reported those statements to Fadler, who informed her that such conduct would not be tolerated. These isolated remarks constitute "sporadic use[s] of abusive language" that are merely "rude or unpleasant," and are not actionable under Title VII. *Cross*, 615 F.3d at 981; *Nitsche*, 446 F.3d at 845–46. No reasonable jury could find that the terms, conditions, or privileges of plaintiff's employment were affected by those remarks. All the more so because plaintiff considered the remarks mere "noise" while she was still employed. *See Harris*, 510 U.S. at 21–22. Accordingly, the

18

Court will grant summary judgment to Saint Francis on the Title VII harassment claim.

* * * * *

For the reasons discussed above,

**IT IS HEREBY ORDERED** that the amended motion for summary judgment of defendant Saint Francis Medical Center [Doc. #113] is **granted**.

**IT IS FURTHER ORDERED** that defendant's motion for summary judgment [Doc. #90] is **moot**.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment [Doc. #102] is **denied**.

A separate judgment will be entered this same date.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 18th day of June, 2015.